IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

DEC 15 2015

Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| NATIONAL SURETY CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>GEORGE E. MACK III,<br><br>Defendant. | CV 15-35-BLG-SPW<br><br>OPINION and ORDER |

Plaintiff National Surety Corporation ("National Surety") filed this action seeking a declaration that it does not owe Defendant George E. Mack III ("Mack") a duty to defend or indemnify under their insurance contract. The Court agreed to stay the briefing on Mack's pending Motion to Stay until it resolved the issue of which state's law governs the interpretation of the insurance policy. Mack argues that Oregon law applies, while National Surety contends that Montana law applies. After reviewing the additional briefing and relevant authorities, the Court agrees with National Surety that Montana law governs the interpretation of the insurance policy.

**I. Background**

Mack is a citizen of Oregon, while National Surety is organized under Illinois law with its principal place of business in California. Mack used an

1

Oregon broker to procure a homeowner's insurance policy from National Surety that covered his house in Portland, Oregon. (Doc. 1-2 at 1, 8). In addition to insuring against damage to his house, National Surety agreed to defend and indemnify any claims made against Mack for "bodily injury, personal injury, or property damage caused by an occurrence." (*Id.* at 37). This coverage extends to claims or suits brought "anywhere in the world." (*Id.*).

On February 19, 2010, a bankruptcy trustee initiated an adversary proceeding before the United States Bankruptcy Court for the District of Montana, Case No. 08-61570-11, Adversary No. 10-00075 ("Underlying Proceeding"). Mack is one of several defendants in the Underlying Proceeding. The Complaint contains allegations that "Mack participated in a fraudulent scheme to defraud" debtors to a bankruptcy estate. (Doc. 1-1 at 4). The debtors are Montana residents. In addition, the bankruptcy trustee alleges that "Mack worked extensively in Montana, controlled actions of employees of Mack in Montana and had regular contact with the State of Montana." (*Id.*). The bankruptcy trustee claims that Mack assisted in the fraudulent transfer of a number of assets and that Mack knew that the fraudulent scheme could cause harm to be suffered in Montana. While the assets were found in several countries, at least one asset was a parcel of land located in Montana. (*Id.* at 6-8).

Mack submitted a claim to National Surety for defense and indemnity in the Underlying Proceeding. After initially denying coverage, National Surety agreed to defend Mack under a reservation of rights. (Doc. 12-1). National Surety subsequently brought the instant action and seeks a declaration that it does not owe Mack a duty to defend and indemnify in relation to the Underlying Proceeding. Before addressing the merits of the action, the parties ask this Court to determine whether Oregon or Montana law applies to the interpretation of the insurance policy.

## II. Legal Standard

"Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). Accordingly, this Court will apply Montana's choice of law principles.

## III. Analysis

Mack initially argues that Oregon law governs the insurance policy pursuant to a choice-of-law provision. Mack argues that even if the policy does not have a choice-of-law provision, Oregon law still applies as Oregon is the place of performance. National Surety contends that the insurance policy does not contain a choice-of-law provision. National Surety also disputes that Oregon is the place

of performance. Instead, National Surety argues that Montana is the place of performance and therefore Montana law governs.

### A. Choice-of-law provision

The Court must initially determine whether the insurance policy contains a choice-of-law provision. If it does, then the Court must apply the chosen state's law unless the chosen state has no substantial relationship to the parties or application of the chosen state's laws would be contrary to the fundamental policy of a state that has a materially greater interest than the chosen state. *Tidyman's Mgmt. Servs. Inc. v. Davis*, 330 P.3d 1139, 1148 (Mont. 2014).

Mack argues there are multiple choice-of-law provisions in the insurance policy. For example, Mack points to a policy provision that states:

> K. Conformance with State Law – If part of this policy does not comply with the laws of the state in which it is written, that part is amended to comply with those laws.

(Doc. 1-2 at 75). A similar provision is found in an endorsement to the policy. (*Id.* at 47). Mack also points to several provisions that specifically identify Oregon law. In an amendatory endorsement, the policy states that:

I. Mortgage Clause

> The following is added:
>
> 7. Oregon law states as follows:

> "If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the Insured, such interest in this policy may be canceled by giving to such mortgagee a 10 days' written notice of cancellation".

(*Id.* at 71). The same endorsement also states that National Surety will insure the legal representative of a deceased person who was in a domestic partnership "recognized under Oregon law" with an insured. (*Id.* at 70). Finally, the policy defines the term "you" as the named insured and a "party who, with the named insured, has entered into a domestic partnership, recognized under Oregon law." (*Id.* at 17).

The Court disagrees with Mack and finds that the above-cited provisions do not qualify as choice-of-law provisions, even if the provisions are taken collectively. First, the provision entitled "Conformance with State Law" does not operate as a choice-of-law provision. *Ins. Co. of N. Am. v. San Juan Excursions, Inc.*, 2006 WL 2635635, at *4 (W.D. Wash. Sept. 12, 2006). By its plain terms, the provision is designed to ensure that the policy does not violate Oregon law. The provision does not establish the parties' intent to have Oregon law apply to the governance or interpretation of the policy. *DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474, 482 (R.I. 2004).

The remaining provisions cited by Mack similarly do not establish an agreement that Oregon law applies to the policy's interpretation. The addition to

5

the Mortgage Clause states a portion of Oregon law regarding how a designated mortgagee's interest in the policy may be cancelled. Incorporating an aspect of state law into the policy does not reflect an intention to have that state's law apply to the interpretation of the entire policy. Similarly, in several provisions the policy uses Oregon law to define what qualifies as a domestic partnership. Those provisions do not reflect an agreement that the policy as a whole would be interpreted under Oregon law. Due to the absence of an express agreement to apply Oregon law to the interpretation of the entire policy, the Court finds that there is no choice-of-law provision found in Mack's policy with National Surety.

### B. Choice of law analysis

Since Mack's insurance policy does not specify which law applies to a dispute, this Court must apply "the law of the state which has the 'most significant relationship' to the transaction and to the parties, with respect to that issue." *Tidyman's*, 330 P.3d at 1147. To make the determination, Montana law requires a "careful, step-by-step" application of the Restatement (Second) of Conflict of Laws ("Restatement"). *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 708 (Mont. 2003). The applicable portions of the Restatement provide:

§ 188 Law Governing in Absence of Effective Choice by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

6

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a) the place of contracting,

    (b) the place of negotiation of the contract,

    (c) the place of performance,

    (d) the location of the subject matter of the contract, and

    (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

§ 193 Contracts of Fire, Surety or Casualty Insurance

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Mitchell*, 68 P.3d at 708. Both § 188 and § 193 require application of § 6. Section 6 of the Restatement provides:

§ 6 Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include...[seven factors follow].

7

*Mitchell*, 68 P.3d at 708. If there is a statutory directive as described in § 6(1), then it is unnecessary to analyze the factors under § 6(2), *Tidyman's*, 330 P.3d at 1147, or under § 188(2), *Wamsley v. Nodak Mut. Ins. Co.*, 178 P.3d 102, 112 (Mont. 2008).

The Montana Supreme Court has determined that Mont. Code Ann. § 28-3-102 provides "a statutory directive that Montana law should apply if performance of the contract occurred in Montana." *Tidyman's*, 330 P.3d at 1147. Section 28-3-102 states:

> A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

Accordingly, under Restatement § 6(1) and Mont. Code Ann. § 28-3-102, absent a choice-of-law provision, Montana law applies to contracts performed in Montana. *Tidyman's*, 330 P.3d at 1147.

If an insurance policy's coverages apply in any state, then Montana is an anticipated place of performance. *Mitchell*, 68 P.3d at 708. The actual place of performance of an insurance contract is where: (1) the insured's claim arises; (2) the insured obtains judgment; (3) the insured is entitled to receive benefits; or (4) the insured incurred accident related expenses. *Id.* at 709.

Facing facts similar to the instant case, the Montana Supreme Court applied these principles in *Wamsley*. In *Wamsley*, the Wamsleys were North Dakota citizens who owned automobile insurance through a North Dakota-based insurance company. 178 P.3d at 106. While driving through Montana, the Wamsleys died in an accident caused by a drunk driver. *Id.* The Wamsleys' estate received the coverage limits of the drunk driver's insurance policy. *Id.* The Wamsleys' estate also sued the Wamsleys' insurer and sought to stack the Wamsleys' underinsured motorist coverages that they owned for their three North Dakota-based vehicles. *Id.* The Montana district court applied Montana law and ruled in favor of the Wamsleys' estate. *Id.* at 107.

The Montana Supreme Court affirmed the application of Montana law. *Id.* at 113. The Court applied § 6(1) of the Restatement and Mont. Code Ann. § 28-3-102 and determined that Montana was the place of performance for the Wamsleys' insurance policies. *Id.* at 112. The Court noted that the insurance policies specified the area of coverage as "the United States of America, its territories and possessions; Puerto Rico; or Canada." *Id.* Therefore, Montana was an anticipated place of performance. *Id.* In addition, Montana was the actual place of performance for several reasons. *Id.* at 113. The accident and damages arose in Montana. *Id.* In addition, the underlying personal injury lawsuit and subsequent judgment was obtained in Montana. *Id.* Since Montana was the insurance

9

policies' place of performance, the Court interpreted the policies according to Montana law. *Id.*

The Court finds that *Wamsley* is analogous to the instant case and that Montana law applies to the interpretation of Mack's insurance policy. As discussed above, the policy does not contain a choice-of-law provision. Accordingly, under Restatement §§ 188(1) and 193, this Court looks to Restatement § 6. Pursuant to § 6, the Court looks to Montana's statutory directive to apply the state's law where the insurance policy is performed. Mont. Code Ann. § 28-3-102.

Like in *Mitchell*, *Wamsley*, and *Tidyman's*, the Court finds that Mack's insurance policy's place of performance is Montana. National Surety's policy applies to claims brought "anywhere in the world." (Doc. 1-2 at 37). Like in *Mitchell* and *Wamsley*, Montana is an anticipated place of performance. *Mitchell*, 68 P.3d at 708; *Wamsley*, 178 P.3d at 112.

Montana is also the actual place of performance. The insured's and the insurer's residence is not determinative. In *Wamsley*, the insured and the insurer were residents of North Dakota. However, the Montana Supreme Court determined that North Dakota is not where the contract was performed. Instead, the Montana Supreme Court looked to other factors, many of which appear in the instant case.

10

Similar to *Wamsley*, the Underlying Proceeding was filed in Montana. 178 P.3d at 113. The wrongful conduct alleged against Mack in the Underlying Proceeding occurred partially in Montana. The debtors that Mack allegedly helped defraud are Montana residents, and Mack allegedly knew harm would be suffered in Montana. Like in *Mitchell*, Mack will receive the benefit of his insurance policy in Montana. 68 P.3d at 709. Mack is receiving a defense in the Underlying Proceeding before the United States Bankruptcy Court for the District of Montana. If Mack prevails in the instant case, National Surety will indemnify Mack against the possible judgment rendered by the Bankruptcy Court. Because of the statutory directive found at Mont. Code Ann. § 28-3-102, the Court should not analyze the factors found at Restatement § 188(2). *Wamsley*, 178 P.3d at 112. The insurance contract is being performed in Montana; therefore, Montana law will govern its interpretation in relation to the Underlying Proceeding.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

1. Montana law governs the interpretation of the insurance contract between Mack and National Surety in relation to the Underlying Proceeding.

2. Pursuant to the Scheduling Order (Doc. 19), National Surety shall respond to Mack's pending Motion to Stay Proceedings on Plaintiff's Duty to Indemnify within 14 days of the date of this Order.

DATED this 15th day of December, 2015.

/s/ Susan P. Watters
SUSAN P. WATTERS
United States District Judge